1

2

3

4                    **UNITED STATES DISTRICT COURT**
                           **DISTRICT OF NEVADA**
5                           **RENO, NEVADA**

6

7
   FAIRBANKS GOLD MINING, INC., a      )    3:10-cv-00492-ECR-WGC
8  Delaware Corporation,               )
                                       )
9       Plaintiff,                     )
                                       )
10 vs.                                 )         **Order**
                                       )
11 D&D TIRE, INC., a Nevada            )
   Corporation; and PURCELL TIRE &     )
12 RUBBER COMPANY, a Missouri          )
   Corporation,                        )
13                                     )
        Defendants.                    )
14 _____)
                                       )
15 D&D TIRE, INC., a Nevada            )
   Corporation; and PURCELL TIRE &     )
16 RUBBER COMPANY, a Missouri          )
   Corporation,                        )
17                                     )
        Third Party Plaintiffs,        )
18                                     )
   vs.                                 )
19                                     )
   DURATRAY, INC., a Delaware          )
20 Corporation; DURATRAY              )
   INTERNATIONAL, a foreign            )
21 Corporation; CONYMET DURATRAY       )
   NORTH AMERICAN OPERATIONS, LLC, a   )
22 foreign limited liability company; )
   ROE CORPORATIONS I-V; PAUL          )
23 DIMARTINI, an individual; and       )
   BRITT JOHNSON, an individual,       )
24                                     )
        Third Party Defendants.        )
25 _____)

26

27      Now pending are a motion to dismiss (#22) filed by Third Party

28 Defendants Paul A. DiMartini and Britt T. Johnson, and three motions

to dismiss (#37, 48, and 49) filed by Third Party Defendant Duratray, Inc.

## I. Factual Background

Plaintiff Fairbanks Gold Mining, Inc. ("Fairbanks") is a Delaware corporation with its principal place of business in Fairbanks, Alaska. (Compl. ¶ 3 (#1).) Defendant/Third Party Plaintiff D&D Tire, Inc. ("D&D") is a Nevada corporation doing business in the state of Nevada. (Am. Third Party Compl. ¶ 1(#44)). Defendant/Third Party Plaintiff Purcell Tire and Rubber Company ("Purcell") is a Missouri corporation doing business in the state of Nevada. (Id. ¶ 2.) On May 1, 2008, Purcell acquired D&D through a purchase of owners Paul DiMartini's and Britt Johnson's stock. (Id. ¶ 19.) Duratray International is a foreign corporation with its principal place of business in Australia doing business throughout the United States. (Id. ¶ 4). Conymet Duratray North American Operations, LLC ("DNA") is a Texas limited liability company doing business throughout the United States. (Id. ¶ 5). Duratray, Inc. is a Delaware corporation doing business throughout the United States and, upon information and belief, the successor in interest to DNA (Id. ¶ 3). Defendants further allege in their Amended Third Party Complaint (#44) that Duratray, Inc., Duratray International, and DNA are affiliated or subsidiary entities of one another, owned and controlled by the same officers and directors, agents of one another acting within the course of that relationship, and subject to the right of control or authorized to act on behalf of each other (all three Duratray entities will hereafter be collectively referred to as "Duratray") (Id. ¶¶ 6-7).

2

Duratray is a supplier of light weight truck bodies for use on large mining trucks. (Id. ¶ 11). In June 2007, D&D and Duratray began discussions regarding D&D serving as a distributor of Duratray products, including the light weight truck bodies. (Id. ¶ 12). Duratray agreed to have D&D serve as a distributor of its products. (Id. ¶ 13).

In December 2007, Fairbanks and D&D began discussions about Fairbanks purchasing four (4) Duratray truck bodies for its operations in Fairbanks, Alaska. (Id. ¶ 14). Shortly after Purcell acquired D&D on May 1, 2008, Duratray informed Purcell/D&D that it could ship four truck bodies at a price of $143,133.00 each, plus $83,000.00 each in shipping and $2,500.00 in on site training. (Id. ¶ 26). Purcell/D&D relayed the quote to Fairbanks. (Id. ¶ 27). On May 19, 2008, Fairbanks notified Purcell/D&D that it would now like five truck bodies instead of four. (Id. ¶ 31). Purcell/D&D forwarded the request to Duratray and confirmed the price quote for five truck bodies at $143,738.00 per unit, $83,000.00 per unit for freight and assembly, $2,500.00 for on site training (for a total of $1,136,190.00), plus reasonable and customary travel and expenses for one field engineer on site. (Id. ¶ 32).

In June 2008, Duratray informed Purcell/D&D that all requests to order the truck bodies would need to be reevaluated in light of rapid price increases due to a steel shortage. (Id. ¶ 35). Fairbanks subsequently sent Purcell/D&D a Purchase Order for five Duratray truck bodies and accompanying charges totalling $1,136,190.00; Purcell/D&D forwarded it to Duratray. (Id. ¶ 36). Duratray then informed Purcell/D&D that it could only supply three

3

of the truck bodies at the original price, and that each additional body would be approximately $43,000.00 extra.  (Id. ¶ 38).

It was at about this time that Purcell discovered that D&D, the company it acquired, never obtained a fully executed distributor agreement with Duratray.  (Id. ¶ 39).  Negotiations broke down and Fairbanks never received any of the truck bodies.  (See id. ¶¶ 40-46).

## II. Procedural Background

Plaintiff Fairbanks filed its complaint (#1) on August 9, 2010. On September 13, 2010, Defendants Purcell and D&D filed their answer and third party complaint (#11) against Third Party Defendants Duratray, Inc., Paul DiMartini, and Britt Johnson.  Third Party Defendants DiMartini and Johnson subsequently filed their motion to dismiss (#22) the third party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Third Party Plaintiffs Purcell and D&D filed their response (#34) on December 6, 2010, and Third Party Defendants DiMartini and Johnson filed their reply (#36) on December 17, 2010.  On December 22, 2010, Third Party Defendant Duratray, Inc. filed a motion to dismiss (#37) the third party complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

On January 10, 2011, Third Party Plaintiffs filed their amended third party complaint (#44), adding Duratray International and DNA as Third Party Defendants, and then filed their response (#45) to Third Party Defendant Duratray's prior motion to dismiss (#37) for lack of personal jurisdiction.  Third Party Defendant Duratray, Inc. filed its response (#47) on January 20, 2011, as well as a renewed motion to dismiss (#48) due to  lack of personal jurisdiction and a

4

1   motion to dismiss (#49) pursuant to Rule 12(b)(6) for failure to
2   state a claim.  These motions also include Third Party Defendant
3   Duratray, Inc.'s replies in support of their prior motions to
4   dismiss (#37, 48, and 49) and incorporate their prior motion to
5   dismiss (#37) for lack of jurisdiction by reference.  Third Party
6   Plaintiffs filed their response (#51) to the renewed motion to
7   dismiss (#48) for lack of personal jurisdiction and the motion to
8   dismiss (#49) for failure to state a claim on February 7, 2011.

9   **III. Third Party Defendant Duratray, Inc.'s Motion to Dismiss for**
10  **Lack of Personal Jurisdiction (# 48)**

11      **A. Legal Standard**

12      Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a
13  defendant to move to dismiss a complaint for lack of personal
14  jurisdiction.  "Where a defendant moves to dismiss a complaint for
15  lack of personal jurisdiction, the plaintiff bears the burden of
16  demonstrating that jurisdiction is appropriate." Schwarzenegger v.
17  Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (citing
18  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)).  Where a
19  district court receives only written submissions, the plaintiff need
20  only make a prima facie showing of jurisdictional facts.
21  Schwarzenegger, 374 F.3d at 800.  In determining whether a plaintiff
22  has met this burden, uncontroverted allegations in the complaint
23  must be taken as true, and conflicts between the facts contained in
24  the parties' affidavits must be resolved in plaintiff's favor. Rio
25  Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir.
26  2002) (citing AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588
27  (9th Cir. 1996)).

28

5

Where, as here, there is no applicable federal statute governing personal jurisdiction, this Court looks to the law of the state of Nevada. <u>See</u> Fed. R. Civ. P. 4(k)(1)(A). Nevada's long-arm statute permits personal jurisdiction to the full extent of the Constitution. <u>Trump v. Eighth Judicial Dist. Court</u>, 857 P.2d 740, 747 (Nev. 1993); Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. § 14.065(1). Hence, we need only consider principles of due process, which require that a defendant must have at least "minimum contacts" with the forum such that the exercise of jurisdiction would "not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

**A. Discussion**[1]

The Ninth Circuit utilizes a three-part test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Schwarzenegger</u>, 374 F.3d at 802 (citing <u>Lake v. Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of satisfying the first two prongs of the test. <u>Sher</u>, 911 F.2d at 1361.

_____

[1]It appears that Third Party Plaintiffs do not dispute Third Party Defendant Duratray, Inc.'s assertion that this Court does not have general jurisdiction over Duratray, Inc. Accordingly, the Court addresses only specific personal jurisdiction.

1
2
3
4

> If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.

5
6

Schwarzenegger, 374 F.3d at 803 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

7
8
9
10
11
12
13
14

Third Party Defendant Duratray, Inc. argues that Third Party Plaintiffs cannot possibly establish personal jurisdiction over Duratray, Inc. because it was not formed until May 20, 2008 and had no contacts with Nevada until April 2009, well after the events underlying this suit took place.  For this reason, Duratray, Inc. argues that it does not have sufficient minimum contacts with Nevada, and that the claims do not arise out of what little contact it did have with the state.

15
16
17
18
19
20
21
22
23
24
25
26
27

It appears, however, that Third Party Plaintiffs seek to impute DNA and/or Duratray International's contacts with Nevada to Duratray, Inc. for purposes of personal jurisdiction.  While it is true that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent, there are two exceptions to that rule: (1) where the subsidiary is the parent's alter ego, or (2) where the subsidiary is the parent's agent.  Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003).  Additionally, DNA's contacts with Nevada may be imputed to Duratray, Inc. and/or Duratray International as successors in interest to DNA if the law of the forum, Nevada, would hold either liable for the actions of their alleged predecessor.  See In re Nazi Era Cases Against German

28

7

1  <u>Defendants Litig.</u>, 153 F.App'x 819, 822-23 (3d Cir. 2005);  <u>Purdue</u>

2  <u>Research Found. v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 783-84

3  (7th Cir. 2003); <u>Patin v. Thoroughbred Power Boats Inc.</u>, 294 F.3d

4  640, 654 (5th Cir. 2002);  <u>Williams v. Bowman Livestock Equip. Co.</u>,

5  927 F.2d 1128, 1132 (10th Cir. 1991);  <u>City of Richmond v. Madison</u>

6  <u>Mgmt. Grp., Inc.</u>, 918 F.2d 438, 454 (4th Cir. 1990).

7       In this case, there are facts that seem to indicate that

8  Duratray, Inc. was formed as a successor in interest to DNA, which

9  may in turn have functioned as an agent of Duratray International.

10  There are further indicators that one or more of these entities may

11  be a subsidiary of one or more of the others.  However, it is

12  unclear from the record who and what entities exactly were involved

13  in the facts underlying this suit and how they are related to each

14  other.  In a similar case, the Ninth Circuit found that the district

15  court abused its discretion in denying a party's motion for

16  jurisdictional discovery in order to determine if a subsidiary's

17  contacts could be imputed to its parent for purposes of

18  jurisdiction.  <u>See</u> <u>Harris Rutsky</u>, 328 F.3d at 1135; <u>see also</u> <u>Chan v.</u>

19  <u>Soc'y Expeditions, Inc.</u>, 39 F.3d 1398, 1406 (9th Cir. 1994)

20  (remanding to district court because record facts were insufficient

21  to determine whether subsidiary's minimum contacts could be imputed

22  to parent); <u>Wells Fargo & Co v. Wells Fargo Exp. Co.</u>, 556 F.2d 406,

23  430 n. 24 (9th Cir. 1977)("[I]t is clear that a court may allow

24  discovery to aid in determining whether it has in personam or

25  subject matter jurisdiction.") (citations omitted).  As was the case

26  in <u>Harris Rutsky</u>, the facts here are simply not sufficiently

27  developed to render a decision on the issue of personal jurisdiction

28                                      8

1 over Third Party Defendant Duratray, Inc.  Accordingly, the Motion
2 to Dismiss Based on Lack of Personal Jurisdiction (#48) will be
3 denied without prejudice in order to permit jurisdictional
4 discovery.

5 **IV. Third Party Defendant Duratray, Inc.'s Motion to Dismiss for**
6 **Failure to State a Claim (# 49)**

7     **A. Legal Standard**

8     Third Party Defendant Duratray, Inc. has filed a motion to
9 dismiss (#49) Third Party Plaintiffs' amended third party complaint
10 (#44) pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule
11 8(a)(2) requires only "a short and plain statement of the claim
12 showing that the pleader is entitled to relief."  While this
13 pleading standard does not require detailed factual allegations, it
14 does demand more than "a formulaic recitation of the elements of a
15 cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
16 (2007) (citation omitted).  A defendant must be put on fair notice
17 of a plaintiff's claims and the grounds upon which they rest.  Id.

18     In considering a 12(b)(6) motion, all material allegations in
19 the complaint are accepted as true and are construed in a light most
20 favorable to the non-movant.  Cahill v. Liberty Mut. Ins. Co., 80
21 F.3d 336, 337-38 (9th Cir. 1996).  To survive a motion to dismiss, a
22 complaint must contain sufficient facts to "state a claim to relief
23 that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim
24 has facial plausibility when the plaintiff pleads factual content
25 that allows the court to draw the reasonable inference that the
26 defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,
27 -- U.S. --, 129 S.Ct. 1937, 1949 (2009).  "Factual allegations must

28                                    9

1   be enough to raise a right to relief above the speculative level."

2   Twombly, 550 U.S. at 555 (citation omitted).  Otherwise, the

3   complaint must be dismissed.

4       **B. Discussion**

5       Third Party Plaintiffs allege in their amended third party

6   complaint (#44) that Duratray, Inc., Duratray International, and DNA

7   are the alter egos of each other.  Pursuant to Nevada law, a

8   plaintiff must prove the following elements in order to establish an

9   alter ego claim:

10          (1) the corporation must be influenced and governed by the
            person asserted to be its alter ego; (2) there must be such
11          unity of interest and ownership that one is inseparable from
            the other; and (3) the facts must be such that adherence to
12          the fiction of a separate entity would, under the
            circumstances, sanction a fraud or promote injustice.
13
    Truck Ins. Exch. v. Palmer J. Swanson, Inc., 189 P.3d 656, 660 (Nev.
14
    2008).
15
16      In support of their alter ego claim, Third Party Plaintiffs

17   allege that Duratray, Inc., Duratray International, and DNA are

18   affiliated or subsidiaries of one another and are all controlled by

19   the same officers and directors. (Am. Third Party Compl. (#44) ¶¶ 6,

20   51).  Third Party Plaintiffs further allege that Duratray, Inc.'s

21   listed principal place of business in Denver, Colorado is the same

22   address as Duratray International's United States office, and

23   Duratray, Inc.'s registered Texas location is the same address

24   registered by DNA as its principal place of business.  (Id. ¶¶ 49-

25   50).  Third Party Plaintiffs further allege that Duratray, Inc. is

26   the successor in interest to DNA.  (Id. ¶ 3).  Finally, by

27   collectively referring to the three Duratray entities as "Duratray,"

28                                  10

1  (Id. ¶ 6),  Third Party Plaintiffs allege that all three Duratray
2  were involved in all the relevant facts underlying their claims.

3       Third Party Defendant Duratray, Inc. argues that all of Third
4  Party Plaintiffs' allegations are mere conclusory allegations, with
5  the exception of the various addresses of the three Duratray
6  entities.  However, the fact that the three entities are, at the
7  very least, affiliated with each other and controlled by the same
8  people is not a conclusory allegation, but a factual matter
9  suggestive of alter ego liability.  While it is true that these
10 facts alone are probably insufficient to prove an alter ego claim,
11 see Bonanza Hotel & Gift Shop, Inc. v. Bonanza No. 2, 596 P.2d 227,
12 229 (Nev. 1979), they do "raise a right to relief above the
13 speculative level."  Twombly, 550 U.S. at 555.  The inference of
14 alter ego liability is further supported by the allegation that
15 Duratray, Inc. is a successor in interest to DNA.  Finally, Third
16 Party Plaintiffs have alleged that all three Duratray entities
17 engaged in the events that form the basis of this suit.  These facts
18 are equally supportive of successor and/or agency relationships
19 among the three entities.  Reading the complaint in its entirety, it
20 is apparent that Third Party Plaintiffs have properly pleaded their
21 claim against Duratray, Inc.  Thus, Third Party Plaintiffs' alter
22 ego claim for relief survives.

23 **V. Conclusion**

24      Third Party Defendant Duratray Inc.'s motion to dismiss (#48)
25 based on personal jurisdiction must be denied.  Until the
26 jurisdictional facts are further developed, the Court is unable to
27
28                                    11

1  rule on the issue.   Third Party Defendant Duratray, Inc. may renew

2  its motion after the completion of jurisdictional discovery.

3       **IT IS, THEREFORE, HEREBY ORDERED** that Third Party Defendant

4  Duratray, Inc.'s motion to dismiss (#48) for lack of personal

5  jurisdiction is **DENIED** without prejudice.

6       **IT IS FURTHER ORDERED** that Third Party Defendant Duratray,

7  Inc.'s motion to dismiss (#49) for failure to state a claim is

8  **DENIED**.

9       **IT IS FURTHER ORDERED** that Third Party Defendants DiMartini and

10  Johnson's motion to dismiss (#22) and Third Party Defendant

11  Duratray, Inc.'s motion to dismiss (#37) are **DENIED** as moot due to

12  the subsequent filing of an amended third party complaint (#44).

13

14

15

16  DATED: September 23, 2011.

17                                    Edward C. Reed.

18                                    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28                                  12